UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

YOUSEF NABIH SALEM,

    Plaintiff,    Civil Action No.: 14-11616
            Honorable George Caram Steeh
    v.        Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

# REPORT AND RECOMMENDATION
# ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 15, 18]

  Plaintiff Yousef Salem appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the administrative law judge ("ALJ") erred in formulating a residual functional capacity that failed to account for Salem's credible non-exertional limitations. For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 18]** be **DENIED**;

- Salem's motion **[R. 15]** be **GRANTED IN PART AND DENIED IN PART**; and,

- the Commissioner's decision be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendation.

I.   BACKGROUND

   A.   **Plaintiff's Background and Claimed Disabilities**

Salem, forty-five at the time of application, was previously self-employed managing a tow truck business and a restaurant, among other jobs.  He stopped working in 2004 after a motor vehicle accident.  He alleges disability, in part, as a result of a second motor vehicle accident in January 2009 that exacerbated pre-existing back and right shoulder injuries, and also injured his left shoulder.  [R. 11-2, Tr. 38-39; R. 11-6, Tr. 260].

   B.   **Procedural History**

Salem filed two previous applications for DIB and SSI.  The first alleged disability since April 14, 2004, and was denied in a June 2, 2009 written decision after an administrative hearing.  [R. 11-3, Tr. 86-97]. Salem did not appeal.  He filed a second set of applications in September 2009 alleging disability since January 11, 2009.  [R. 11-5, Tr. 183-89].

These applications were denied initially and on reconsideration through application of Acquiescence Ruling 97-4(9).[1]  [R. 11-4, 126-30, 131-35].  Salem did not appeal.

Salem filed the instant benefits applications in November 2011, alleging disability beginning the day after his prior administrative denial, June 3, 2009.  [R. 11-5, Tr. 192].  The claims were denied initially and Salem filed a timely request for an administrative hearing, held on November 20, 2012, at which Salem testified.  [R. 11-2, Tr. 34-59].  In a January 14, 2013 written decision, the ALJ found Salem not disabled.  [*Id.*, Tr. 16-33].  On March 21, 2014, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  [*Id.*, Tr. 1-6].  Salem filed for judicial review on April 23, 2014.  [R. 1].

### C. The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any

---

[1] Acquiescence Ruling 97-4(9), applicable in the Ninth Circuit where Salem filed this claim, states: "When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing nondisability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption . . . by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period." 1997 SSR LEXIS 4, at *6, 1997 WL 742758 (Dec. 3, 1997).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[2] Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

4

claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

The June 2009 ALJ ruling had found Salem capable of performing a limited range of light work that involved no more than occasional postural movements or overhead reaching. [R. 11-3, Tr. 90]. Applying Acquiescence Rulings 98-3(6) and 98-4(6),[4] the present ALJ first concluded there was new and material evidence in the record, which unbound him from the prior ALJ's decision. [R. 11-2, Tr. 19-20].

The ALJ then analyzed Salem's claim using the five-step sequence. At step one, he determined Salem had not engaged in substantial gainful activity since his alleged onset date. [*Id.*, Tr. 22]. At step two, he found the following severe impairments: "degenerative disc disease of the lumbosacral and cervical spine as well as tendonitis with impingement and osteoarthritis of the shoulders." [*Id.*]. At step three he concluded that none of Salem's impairments, either alone or in combination, met or medically

---

[4] Acquiescence Rulings 98-3(6) and 98-4(6) require that an ALJ "adjudicating a subsequent disability claim with an unadjudicated period" of claimed disability must adopt the prior administrative findings "with respect to the unadjudicated period unless there is new and material evidence relating to such a finding," which reflects the state of the law in this Circuit. 1998 SSR LEXIS 4, 1998 SSR LEXIS 5, *citing Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); *Denard v. Sec'y of Health and Human Servs.*, 907 F.2d 598 (6th Cir. 1990).

equaled a listed impairment. [*Id.*, Tr. 23]. Next, the ALJ assessed Salem's residual functional capacity, finding him capable of the full range of sedentary work. [*Id.*]. At step four, the ALJ found that this RFC prevented Salem from returning to his past relevant work. [*Id.*, Tr. 28]. At step five, relying on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, appx. 2, the ALJ concluded that Salem was not disabled. [*Id.*, Tr. 28-29].

## II. STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if

substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*,

7

741 F.3d at 729. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Cole, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that Salem is not disabled is not supported by substantial evidence.

## III. ANALYSIS

### A. Opinion and Analysis on Issue of Medical Equivalency

Salem argues that the ALJ erred at step three in failing to obtain a medical opinion on the issue of equivalency, and in failing to analyze the issue of equivalency specifically. The Court agrees.

This case proceeded under the experimental "single decisionmaker" model, which allows non-medical agency employees to render an initial denial without expert opinions on the issue of equivalency or disability. 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). However, courts in this district overwhelmingly agree that this procedural change at the initial level did not alter the agency's "longstanding policy" that a medical opinion on the issue of equivalency is necessary at the administrative hearing stage. *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 U.S. Dist. LEXIS 137277, at *14-

8

15, n.8, 2013 WL 5372883 (E.D. Mich. Sept. 25, 2013) (collecting cases and remanding for lack of medical opinion on issue of equivalence) (quoting SSR 96-6p, 1996 SSR LEXIS 3, 1996 WL 374108, at *3 (July 2, 1996)).

In this case, Dr. Thomas Tsai rendered an opinion about Salem's medial equivalency, but only as to his mental impairments, not his physical ones. [R. 11-3, Tr. 106]. The Commissioner argues that Dr. Tsai's signature on the last page of the disability determination form is evidence that he also participated in the physical equivalency determination. [*Id.*, Tr. 112]. The Court disagrees that this constitutes evidence of his participation, as the only signature following the physical portion of the disability determination was that of the single decisionmaker. [*Id.*, Tr. 109-110]. Furthermore, as Salem points out, the code next to Dr. Tsai's signature identifies him as a psychiatrist. [*Id.*, Tr. 106, 112]; Program Operations Manual System DI 28086.031(B)(2)(listing medical specialty codes necessary for medical consultant signature requirements). Therefore, even if Dr. Tsai did participate in determining physical equivalency, he was not qualified to render such an opinion.

The Commissioner points to the testimony of Ronald Semerkjian about medical equivalency from the January 2009 hearing, but that

9

testimony pertained to the period before the current alleged onset date. [R. 11-3, Tr. 86, 89]. Treating physician Dr. Victor Al-Matchy opined more recently (in November 2012) that Salem's impairments met Listing 1.04. R. 11-7, Tr. 476-80]. Although the ALJ gave Dr. Al-Matchy's opinion little weight,[5] [R. 11-2, Tr. 27-28], that opinion could indicate a worsening of Salem's condition since Dr. Semerkjian's testimony, and buttresses this Court's finding that the ALJ's equivalency finding needed the support of a medical opinion from the relevant time period.

The ALJ's failure to comply with applicable regulations in this case is not harmless, as the record contains "conflicting or inconclusive evidence" related to Salem's ability to meet or medically equal Listing 1.04. *Rabbers, 582 F.3d at 657*. Listing 1.04 requires evidence of a spinal disorder "resulting in compromise of a nerve root" and, applicable to this case, "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R. pt. 404, subpt p, appx 1, § 1.04A.

An August 2012 MRI showed L5 nerve root impingement, and

---

[5] Salem does not argue that the ALJ erred in application of the treating physician rule related to this opinion.

treatment records from June and August 2012 show a slight decrease in Salem's lower extremity motor strength. [R. 11-7, Tr. 458, 467-68, 473-74]. Other treatment records find full lower extremity strength. [*Id.*, Tr. 447, 456]. Nevertheless, he was prescribed a cane in May 2012. [*Id.*, Tr. 462-64].

Furthermore, treatment records from the relevant period generally conflict as to whether Salem experienced loss of sensation, although his reflexes were consistently intact. [*Id.*, Tr. 437, 447, 456, 458, 467-68]. Straight leg raising tests performed during the benefits period elicited conflicting negative, "equivocal" and positive results. [*Id.*, Tr. 346, 437-38, 450]. Thus, the "conflicting and inconclusive" nature of the evidence prevents this Court from finding that the ALJ's failure to elicit a medical opinion on the issue of equivalency was merely harmless error. *Rabbers*, 582 F.3d at 657.

### B. RFC for Full Range of Sedentary Work

Salem argues that the ALJ erred in determining that he could engage in the full range of sedentary work, pointing to the ALJ's failure to include RFC limitations related to Salem's need to ambulate with a cane or to the use of his upper extremities. This argument has merit, too.

The ALJ acknowledged that Salem had been prescribed a cane for

11

ambulation, and acknowledged that he presented with a cane at the hearing and at the consultative examination. [R. 11-2, Tr. 25-26]. He declined to incorporate this limitation in his RFC, in part because the RFC he generated was "for seated work." [*Id.*, Tr. 26]. However, as Salem points out, the definition of sedentary work recognizes that "a certain amount of walking and standing is often necessary in carrying out job duties" and thus accommodates "occasional[ ]" walking or standing, which translates to up to two hours daily. 20 C.F.R. 404.1567(a); SSR 96-9p, 1996 LEXIS 6, at *8-9, 1996 WL 374185, at *3 (July 2, 1996) (defining "occasionally" as totaling "no more than about 2 hours of an 8-hour workday"). Thus, the ALJ erred in concluding that sedentary work was equivalent to seated work.

     The ALJ went on to opine that the medical evidence did not support Salem's need for a cane, citing to one treatment record showing lower extremity strength of 5/5 and no neurological deficit. [R. 11-2, Tr. 26; R. 11-7, Tr. 456-57]. While this accurately represents the January 2012 findings of a nurse practitioner (with possible confirmation of a doctor – the notes are unclear), this record was generated prior to Salem's May 2012 cane prescription, and records subsequent to that prescription all document an antalgic gait and decreased strength. [R. 11-7, Tr. 459-50, 462, 464,

467-68]. Thus, the ALJ's failure to incorporate a limitation to cane use is error.

SSR 96-9p notes that the need for a hand-held assistive device for ambulation may in some circumstances substantially erode the base of even sedentary work. 1996 LEXIS 6, at *19-20, 1996 WL 74185, at *7. Significant erosion of an occupational base prevents reliance on the Medical-Vocational Guidelines, and the question of whether a non-exertional impairment significantly erodes a particular occupational base often, although not always, requires VE testimony. *Id.*, at *7; *Damron v. Sec'y of Health and Human Servs.*, 778 F.2d 279, 282 (6th Cir. 1985); *Shelman v. Heckler*, 821 F.2d 316, 231 (6th Cir. 1987). Since the ALJ did not impose such a limitation, he did not engage in this analysis, which prevents this Court's meaningful review and requires remand for further consideration.

The ALJ further erred in failing to incorporate RFC limitations related to Salem's ability to use his upper extremities. While determining that new and material evidence existed supporting restriction to a full range of sedentary work, the ALJ failed to explain how the new evidence supported the elimination of the prior ALJ's restriction to no more than occasional overhead reaching, despite finding Salem's shoulder tendonitis and

impingement to be a severe impairment. [R. 11-2, Tr. 22, 24]. In fact, the ALJ mentioned only one treatment record related to Salem's shoulder condition, finding a full range of motion, [R. 11-7, Tr. 457], and ignored the remaining evidence from this period unanimously observing a limited shoulder range of motion, especially above 90 degrees. [*Id.*, Tr. 436, 452, 458]. SSR 85-15 states that "[r]eaching (extending the hands and arms in any direction)" is an activity "required in almost all jobs. Significant limitations of reaching [ ], therefore, may eliminate a large number of occupations a person could otherwise do." 1985 SSR LEXIS 20, at *18-19, 1985 WL 56857 at *7 (1985). Thus, the ALJ erred in failing to incorporate into his RFC at least a limitation to overhead reaching, which likely would have prevented him from relying on the Medical-Vocational Guidelines at step five.[6]

On remand, the ALJ should impose a limitation regarding Salem's need for a cane and any shoulder limitations supported by the evidence of record, or explain with sufficient supporting evidence why he declines to do so. If he includes such limitations, he must then determine whether or not

---

[6] Salem argues that the ALJ further erred by failing to include a limitation in his RFC to only occasional postural movements, in light of the prior ALJ's finding. The Court agrees with the Commissioner, however, that per SSR 85-15, such a limitation would not significantly erode the sedentary occupational base, and thus any error in this regard is harmless. *See* SSR 85-15, 1985 SSR LEXIS 20, at *17-18, 1985 WL 56857 at *6-7 (1985).

the base of sedentary work is substantially eroded, potentially requiring the assistance of VE testimony, and proceed with the remainder of the step five analysis accordingly.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Salem's Motion for Summary Judgment **[R. 15]** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks reversal and direct award of benefits, the Commissioner's Motion **[R. 18]** be **DENIED** and this case be **REMANDED** for further consideration consistent with this Report and Recommendation.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: June 15, 2015

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*,

638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 15, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager